## W. G. STROBEL v. A. F. ANDERSON.
## HARTFORD ACCIDENT & INDEMNITY COMPANY, GARNISHEE.[1]

February 13, 1937.

No. 31,119.

*Sexton, Mordaunt, Kennedy & Carroll,* for appellant.
*Chauncey C. Colton* and *Fred C. Elston,* for respondent.

LORING, JUSTICE.

This was a garnishment proceeding to enforce collection of a judgment against defendant in a suit arising out of an automobile collision. The appellant, Hartford Accident & Indemnity Company, denies liability on a policy of insurance which it had issued to cover liability of the employes of the Minnesota Highway Patrol while operating state vehicles in direct connection with their duties. The question presented is whether or not Anderson, the defendant, was an employe of the highway patrol at the time of the collision. The trial court found that Anderson was such an employe, and judgment was entered against the garnishee-appellant. This appeal is from that judgment.

Briefly stated the facts are these: Anderson was first employed by the highway patrol in September, 1934, as a license inspector. His duties were to patrol the highways in an automobile furnished by the state, checking violations of the automobile license regulations. He was placed in the Brainerd territory, where his im-

[1]Reported in 271 N. W. 477.

mediate superior officer was one Gordon. John P. Arnoldy was the chief highway patrol officer, but the patrolmen were employed, or at any rate the contracts of employment were signed, by the commissioner of highways. There is some question raised as to whether Arnoldy had the right to discharge Anderson.

July 9, 1935, at a meeting of the patrolmen at Brainerd called by Arnoldy, he complained to Anderson about the way Anderson was doing his work.

Anderson became profanely abusive toward Arnoldy and was asked by Arnoldy to resign. Anderson refused. From this point there is considerable conflict in the evidence as to what took place. There is testimony to the effect that Arnoldy told defendant he was "through." Anderson was asked to leave the meeting, which he did. Anderson denies that Arnoldy told him he was "through." Arnoldy instructed Gordon to have Anderson leave the patrol car at the Brainerd station.

On July 11, two days after the meeting, Gordon met Anderson on the highway. Gordon's account of that meeting was that he advised Anderson to take the highway patrol car back to the patrol station at Virginia and leave it there. Anderson's version of it is that he told Gordon that he was still working, that Gordon said that he was going to Eveleth and instructed Anderson to drive to Virginia and meet him there in a few hours. They met at Virginia later in the day at the highway station, and Anderson claims that they spoke of the July 9 meeting at Brainerd; that he told Gordon he had made out a written report of the previous day's work and that Gordon told him to hold up the reports until "we see what develops."

After the Brainerd meeting Arnoldy returned to St. Paul and under date of July 10 wrote Anderson at his home in Buhl the following letter:

"Re Dismissal

"Dear Sir:

"This is to notify you that, effective July 10, 1935, your services as a license inspector with the highway patrol are no longer required.

"This is in confirmation of my verbal dismissal of you at Brainerd on July 9, 1935.

"Yours very truly
"Department of Highways
"John P. Arnoldy
"Chief Highway Patrol Officer."

Anderson maintains that he did not receive this letter until July 13.

After meeting Gordon July 11 at Virginia, Anderson left the patrol car at the highway garage and was driven home to Buhl by a mechanic. On the morning of July 12 Anderson was driven to the Virginia station from Buhl by his nephew. He there talked again with Gordon and told him he was going to Duluth to perform his duties en route. He went to the highway garage and took the patrol car and started for Duluth, checking license plates on the way. He was still in possession of his badge and papers. Driving back from Duluth that evening he collided with the automobile of plaintiff under circumstances which a jury found sufficient to justify a verdict against him for negligently operating the patrol car.

The garnishee insured all state patrolmen against "accidents arising by reason of the operation by the above described employes, of state-owned motor vehicles * * * in direct connection with the duties of the Minnesota Highway Patrol." The premium was paid by deducting one dollar from each month's pay.

The evidence is conflicting as to whether Anderson was discharged at the Brainerd meeting of July 9. Anderson denies that he was, and his subsequent conduct and that of the officers of the department seem to support that conclusion. In any aspect of the case, there is not such an absence of proof that the record conclusively establishes the opposite contention. It was a question for the determination of the trier of fact. It is supported by the evidence.

Our attention has not been called to anything in the settled case which justifies our review of the question as to garnishee fees.

The judgment is affirmed.